HOME INSURANCE CO. OF NEW YORK v. W. H. SCALES ET AL.

1. SUPREME COURT. *Errors of pleading. Right-result.*

While this court will review rulings on the pleadings which determine the controversy, or some feature thereof, it will not pass *seriatim* upon such rulings when it appears that a trial was finally had on the real grounds of controversy, and every thing involved in the case was investigated.

2. FIRE INSURANCE. *Vacancy of building; what constitutes.*

When, just before the expiration of their term, tenants of insured abandon a building as a store, leaving therein only a small quantity of meat and a few empty barrels and boxes, the meat being sold and removed before the term ends, the building becomes "vacant and unoccupied" within the meaning of a fire insurance policy thereon providing that it shall be void if the building "be or become vacant or unoccupied, and so remain for ten days;" and this, although thereafter, and until a loss occurs, the tenants retain the key at the request of insured, and occasionally make sales of the boxes or barrels.

3. SAME. *Preventing forfeiture. Duty of company.*

An insurance company is under no duty to prevent the forfeiture of a policy by the act of the insured. Where, by removal of a tenant, a building becomes vacant in violation of a policy thereon, though the agent of the company knows it, he is not bound to notify the insured.

4. SAME. *Forfeiture. Reliance on agent. Estoppel.*

The fact that the local agent had promised the owner, who lived at another place, to look after the insurance, and had done so for several

years, and had previously issued a vacancy permit, and, of his own motion, would have issued another, but deemed it unnecessary, will not estop the company from availing of a forfeiture, where the building remains vacant for ten days after the permit, and is burned, the agent having done nothing to mislead the insured after the vacancy.

FROM the circuit court of Oktibbeha county.

HON. NEWNAN CAYCE, Judge.

Action by appellees against appellant, the Home Insurance Company, of New York, on a policy of fire insurance. The building insured, a store-house in West Point, Miss., was occupied, when the policy was issued, by a firm of merchants, tenants of insured, under a lease to expire September 1, 1892. On October 14, 1892, before the expiration of the policy, the building was destroyed by fire, and, the company having refused to recognize its liability, or to pay the face of the policy, this action ensued.

Among other stipulations in the policy, was one declaring that it should be void "if the building should be or become vacant or unoccupied, and so remain for ten days." One of the grounds of defense is that, at the time of the fire, the building had been vacant and unoccupied for more than ten days, and that the policy is, for that reason, void.

Since the question thus presented is held by this court to be decisive of this appeal, it is unnecessary to report the case on the merits in any other aspect. The facts touching this defense, as found by the court from the record, are stated in the opinion. It may be added that there was testimony to show that Hibbler, the local agent of the company at West Point, had promised appellee, W. W. Scales, who lived at Starkville, Miss.. and who acted for the owners of the building, to keep it insured, and for several years had looked after the insurance for them.

The pleadings in the cause are exceedingly voluminous, filling more than one hundred and fifty pages of the record, but all converged, as stated by the court, into three questions of fact, one of which alone, as stated, is held to be decisive.

There was verdict and judgment for plaintiffs, and defendant appeals, assigning as one ground for a reversal the refusal of the court to grant it a peremptory instruction.

*Calhoon & Green,* for appellant.

Upon the undisputed evidence, it is clear the building was vacant and unoccupied. 2 May on Ins., § 249 (*c*); 1 Biddle on Ins., §§ 655, 658, 660, 663; Ostrander on Fire Ins., §§ 140–145. Knowledge by the agent of a subsequent vacancy will not prevent a forfeiture. 2 May on Ins., § 249; 1 Biddle on Ins., § 655. Mere silence does not waive. 65 Miss., 312. It is immaterial that the loss is not the result of the vacancy. 1 Biddle, § 655. Vacancy always increases the hazard. It is certain the tenants would have taken greater care of the building when their own stock of goods was in it than when it was a mere warehouse for old boxes and barrels.

In August, the company, by issuing the vacancy permit, gave assured notice that the building was vacant. Insured acted on the permit, but, on its expiration, took no step to renew it. Hibbler, as agent of the company, was not bound to look after the interest of Scales. In agreeing to do so, he acted as agent for insured. The company did not even know of such agreement.

*Muldrow & Nash,* for appellees.

The testimony shows that, in fact, there was no vacancy; that the tenants of appellees occupied and had control of the house up to the night of the fire; that they had some property and merchandise in the building at that time, and, on the very day the fire occurred, sold merchandise from the building. Hibbler, supposing the tenants intended to vacate, issued a vacancy permit, and would have issued another, but did not, as he learned that the building was not vacant and was still being used as a store-house. This act of the company, through its agent, determined that there was no vacancy. Hibbler had full authority to issue vacancy permits. Even

if there was a vacancy within the meaning of the policy, the conduct and declarations of the company, through its agent, estop it from insisting on this defense. Hibbler knew that appellees relied on him to keep the property insured, and had represented them, upon this understanding, for a number of years. Under the terms of the policy, appellant could have terminated the policy at any time, upon giving proper notice; but, with full knowledge of all the facts, it failed to do so and continued the policy in force and retained the premiums.

To constitute a vacancy, there must be a permanent removal—an entire abandonment. 67 N. Y., 260; 34 Am. R., 106; 7 A. & E., 1037.

Argued orally by *M. Green*, for appellant, and *Wiley N. Nash* and *H. L. Muldrow*, for appellees.

CAMPBELL, C. J., delivered the opinion of the court.

Where the action of the court upon the pleadings determines the controversy between the parties, or some feature of it, and so puts an end to it as to withdraw it from the jury and eliminate it as a factor in the trial of issues of fact, this court should pass upon the action of the lower court on the pleadings; but where the matters involved in the altercations between the parties, however voluminous, and, though the judgment of the court be ever so often required and given, are afterwards litigated before a jury trying the case, this court, on appeal, will not perform the useless task of pronouncing *seriatim* on the various rulings made during the preparatory skirmishing between the combatants, but will pass all by, and deal with the final engagement and what was done in it. The only legitimate object of pleadings is to bring parties to an issue on the real grounds of controversy; and where this court, looking through the records, discovers that a trial was had finally on these grounds, it will not concern itself as to any errors committed in reaching the point of real contest. We have waded wearily through the

vast mass of preliminaries to the final battle in this case to
ascertain that the declaration, with its four counts, the eight
pleas, the numerous replications, the motions to make defi-
nite, motions to strike out allegations, rejoinders, surrejoin-
ders, demurrers at almost every step, leaves to amend, and
judgments as required by the successive steps, the record of
which covers one hundred and sixty pages, all resulted in
bringing the parties to trial of the only matters in dispute
between them; and the question now is, not whether some
slip was made in the hurry of a circuit court trial, and some
error committed in deciding the multitude of questions there
presented, but in the final contest, where every thing involved
in the case was investigated, was any reversible error com-
mitted against the party found against?

The three matters in dispute are: (1) As to the title of the
property insured, (2) as to the occupancy of the house, (3)
as to proof of loss as required by the policy.   The insurance
company denied liability on the ground that there was a
breach of warranty in the matter of title, and that the house
insured was vacant or unoccupied, and so remained for ten
days, in violation of the policy, and there was failure to
make proof of loss as the contract required.

We have carefully considered the three matters of dispute,
and, while we think neither the first nor third presents an
insuperable obstacle to the maintenance of the recovery had,
we cannot escape the conviction that the second does.   The
house was, unquestionably, *unoccupied* for more than ten
days before the fire and when it occurred.   It matters not
that Hibbler, the then local agent of the insurer, now testi-
fies that he did not consider the house vacant or unoccupied,
and that he would have issued another vacancy permit if he
had thought it necessary.   The house had been rented, and,
when insured, was occupied by merchants.   They moved
out, abandoning the house as their store, in August.   The
house was found closed, and a vacancy permit for thirty days
was, at the instance of the general agent, Kreth, issued by

Hibbler, the local agent, and delivered to Scales, who attached it to the policy. He was thus admonished of the fact of non-occupancy, and of the course of business pursued in such case. The time for which the tenants at the time of the issuance of the policy rented, expired September 1. By that time, some meat they had left in the house was sold and removed. They left a few empty molasses barrels, some old boxes and papers in the house, and they had the key—not surrendered to the agent of the owners, because he told them they could keep it until another tenant came. This was not such occupation of the house as the policy required, no matter what Hibbler or anybody else may have thought. If Hibbler knew the facts, and thought the house occupied, he was mistaken in his judgment of what was required to constitute occupation. Grant that his knowledge is imputable to the company, and the case is not altered. The company was not bound to notify the insured of the unoccupied condition of the house, if it actually knew it. Hibbler may have been under obligation to Scales, and he may have disregarded it, or erred in his judgment, and Scales may have cause of complaint against him, but, in all this, Hibbler was friend and agent, if at all, of Scales, and not of the company. If Hibbler, the agent, had done any thing in his capacity as agent, after the house was unoccupied, to mislead the insured, the case would be different, but nothing of that sort occurred. There was silence, and that is never ground for estoppel, except where it is a fraud, which cannot be predicated of this silence. The agent had a right to be silent, and give no notice as to the unoccupied condition of the house. It was no part of his business, as agent of the company, to keep policies from being avoided by violation of their conditions, whatever obligations he may have assumed by his engagement to the insured, as to which engagements he could not bind the insurer.

We feel safe in the assertion that no adjudication, or declaration of a text-writer, can be found to support the proposi-

tion that the house insured in this case was not "unoccu-pied," so as to avoid the policy. We have searched in vain for any such utterance. There are many to the contrary. Richards on Ins., § 150, and cases cited ; 1 Biddle on Ins., § 660, and citations; Ostrander on Ins., § 143, and cases cited; Wood on Fire Ins., § 89, and cases cited; 1 May on Ins., § 249 *et seq.*, and references.

It may be regretted that careless inattention caused the policy to be forfeited, and, gratifying as it would be to us to be able to affirm the judgment in this case, we are constrained to order that it be

<div align="right">

*Reversed.*